Case 2:23-cv-01084-JMA-ARL   Document 36   Filed 12/08/23   Page 1 of 14 PageID #: 484

FILED
CLERK
10:11 am, Dec 08, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------------------X

RACQUEL K. MCPHERSON,

                              Plaintiff,         **MEMORANDUM & ORDER**
                                                                                  23-CV-1084 (JMA) (ARL)

          -against-

BLOOMINGDALE'S, LLC,

                              Defendant.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

       Presently before the Court is the motion by Defendant Bloomingdale's LLC pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA") to compel arbitration and dismiss or, alternatively, stay this action brought by pro se Plaintiff Racquel McPherson, Defendant's former employee. (ECF No. 33.) For the reasons set forth below, the motion is GRANTED and this action is STAYED.

                                    **I.    BACKGROUND**

**A.    Facts**

       A court deciding a motion to compel arbitration "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the nonmoving party." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks, citations, and alterations omitted); see also Sanchez v. Clipper Realty, Inc., 638 F. Supp. 3d 357, 366 (S.D.N.Y. 2022) ("Courts routinely consider documents outside the pleadings when evaluating motions to compel arbitration . . . ."). Accordingly, this Memorandum & Order "draws most of its facts from two declarations Defendant submitted in support of its instant motion and from those declarations' exhibits." Crawley v. Macy's Retail

Holdings, Inc., No. 15-CV-2228, 2017 WL 2297018, at *1 n.1. (S.D.N.Y. May 25, 2017). The first declaration is the Declaration of Cynthia Ripak, "Senior Manager of the Office of Solutions InSTORE for Macy's Inc. . . . and its wholly owned divisions/subsidiaries[,] which include [Defendant]." (ECF No. 33-3 ("Ripak Decl.").) The second declaration is the Declaration of Barry Sherrick, "Manager, Software Engineering for Macy's Systems and Technology, Inc." (ECF No. 33-8 ("Sherrick Decl.").)

### 1. The Solutions InSTORE Plan and its Arbitration Agreement

Solutions InSTORE is Defendant's "comprehensive early dispute resolution program" for its employees. (Ripak Decl. ¶ 5.) The Solutions InSTORE Plan Document ("Plan Document"), which was most recently revised in 2014, sets forth the relevant terms. (Id. ¶ 7; see Brochure, ECF No. 33-4 at 6.[1]) The Solutions InSTORE program ("SIS Program") has four dispute-resolutions steps. The first three steps are recommended but "not required" before proceeding to the final step.[2] (Brochure, ECF No. 33-4 at 13; Plan Document, ECF No. 33-4 at 26.) Step 4 is "final and binding" arbitration before an arbitrator approved by the American Arbitration Association. (Brochure, ECF No. 33-4 at 6, 13; Plan Document, ECF No. 33-4 at 24, 27).

---

[1]   ECF No. 33-4 contains the SIS Program documents given to Defendants' new employees. It contains the SIS Program brochure ("Brochure"), the Plan Document, and an election form to opt out of mandatory arbitration. Citations to ECF No. 33-4 denote the cited document and use pinpoint page citations to the page numbers printed at the top of each page across all documents therein.

[2]   At Step 1, an employee is encouraged to bring workplace disputes to her supervisor or "another member of local management." (Brochure, ECF No. 33-4 at 9). An employee dissatisfied with the result of Step 1 can proceed to Step 2, where the employee makes a written complaint that is "referred to a Senior Human Resources professional and reviewed with the Associate Relations Vice President or Senior Vice President of your business unit." (Id. at 10). If an employee is dissatisfied with the response to Step 2, and if the employee's claim "involv[es] legally protected rights," that employee may move for reconsideration of that decision under Step 3. (Id. at 11-12).

The Plan Document broadly requires arbitration for employment-related claims. Its Article 2 provides:

> Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), are covered claims and shall be settled exclusively by final and binding arbitration . . .
>
> Merely by way of example, Employment-Related Claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, including amendments to all the foregoing statutes, the Employee Polygraph Protection Act, state discrimination statutes, state statutes, and/or common law regulating employment termination . . . including, but not limited to, claims for . . . wrongful discharge . . . ."

(Plan Document, ECF No. 33-4 at 24.). Parties to the Plan Document further agree (1) to not file civil actions asserting claims covered by the arbitration provision, and (2) that any such filed action must be stayed or dismissed so that the parties may arbitrate the disputes. (See id. at 25.)

Defendant does not require its employees to arbitrate employment-related disputes as a condition of employment. Within 30 days of hiring, an employee can opt out of Step 4 by submitting an Early Dispute Resolution Program Election Form ("Election Form") to the Office of Solutions InSTORE in Mason, Ohio. (See Brochure, ECF No. 33-4 at 14-15; Election Form, ECF No. 33-4 at 16-17; Plan Document, ECF No. 33-4 at 23; Ripak Decl. ¶¶ 9-10.) Each employee who does not opt out of Step 4 by the end of this 30-day period "agree[s] to use arbitration as the sole and exclusive means to resolv[e] any dispute regarding [her] employment" and "waive[s] the right to civil action and a jury trial." (Brochure, ECF No. 33-4 at 14; see Plan Document, ECF No. 33-4 at 23 (similar).)

3

Defendant informs its employees about the SIS Program and the terms of arbitration under Step 4 in multiple ways. Defendant provides new employees upon hiring with the Brochure, Plan Document, and Election Form—each of which explains all four SIS Program steps and instructs employees who wish to opt out of Step 4 arbitration to submit the Election Form within 30 days of being hired. (See Ripak Decl. ¶ 8; see generally ECF No. 33-4.) After receiving those materials, new employees must electronically sign a Solutions InSTORE New Hire Acknowledgement Form ("Acknowledgment Form"). (Ripak Decl. ¶ 24; Sherrick Decl. ¶¶ 4-15.) The employee electronically signs the form by clicking an "I Certify" link; entering her Social Security Number, birth date, and zip code; and then clicking a "Continue" link. (Sherrick Decl. ¶¶ 4-15.) The employee is informed that this constitutes her "Electronic Signature." (Exemplar Electronic Signature Page, ECF No. 33-12.)

> By signing the Acknowledgement Form, the new employee agrees that
>
> I have received a copy of the [Brochure] and Plan Document and acknowledge that I have been instructed to review this material carefully. I understand that I have thirty (30) days from my date of hire to review this information and postmark my election form to the Office of Solutions InSTORE if I wish to opt out of Step 4 . . . which is final and binding arbitration. I understand that I will be automatically enrolled in the program and subject to final and binding arbitration from my date of hire unless, within thirty (30) days of my date of hire, I take the steps required to opt out of Step 4 – Arbitration . . .
>
> I understand that if I do not opt out of this program, any disputes or claims relating to my employment, other than those expressly excluded from arbitration in the Plan document, will be resolved using the Solutions InSTORE process described in the brochure and Plan Document.

(ECF No. 33-5 at 1.) The Acknowledgement Form also includes a hyperlink to a website that provides "more information about Solutions InSTORE" and "another copy of the Plan Document." (Id.) Finally, Defendant requires new employees to (1) "view an informational video" that discusses "the arbitration component" of the SIS Program, and then (2) complete a certification

4

that appears at the end of the video to confirm that the employee watched the video. (Ripak Decl. ¶ 25; see ECF No. 33-6 at 2-3 (transcript of video's arbitration discussion).)

### 2. Plaintiff's Employment and Agreement To Arbitrate Employment Disputes

Defendant hired Plaintiff on November 19, 2019, as a "sales employee" for "the Bloomingdale's Roosevelt Field store in Garden City, New York." (Ripak Decl. ¶ 16; see Complaint, ECF No. 1 at 3.) Plaintiff electronically signed the Acknowledgment Form on the previous day, November 18, 2019, after she received the Brochure, Plan Document, and Election Form. (See ECF No. 33-5; Ripak Decl. ¶ 17.) To access the Acknowledgment Form and then again before signing it, Plaintiff entered her social security number, birth date, and zip code—which Defendant's electronic system accepted only because all that information matched the corresponding values in Defendant's records.[3] (See Sherrick Decl. ¶¶ 4-15.) Plaintiff also certified on November 21, 2019, that she watched the informational training video that, as noted above, covers the arbitration component of the SIS Program. (Ripak Decl. ¶ 25; see ECF No. 33-7 (logging the training courses Plaintiff completed, including the SIS Program video training).)

On May 31, 2022, Defendant ended Plaintiff's employment by sending her a termination letter. (See Complaint, ECF No. 1 at 8.)

Plaintiff has never submitted an Election Form to opt out of mandatory arbitration. (Ripak Decl. ¶ 30.) Further, although Plaintiff has "contact[ed] the Office of Solutions InSTORE related to concerns that were addressed through Step 1 of the Program, at no time did she question or challenge her inclusion in the arbitration portion of the Solutions InSTORE Program." (Id. ¶ 33.)

---

[3]     As explained below, while she has not provided a sworn affidavit, Plaintiff asserts in her Opposition Memorandum that she did not "sign an Arbitration Clause." (ECF No. 33-19 at 2.)

5

B.   **Procedural History**

On February 9, 2023, Plaintiff brought this action by filing the Complaint against Defendant, which alleges Defendant subjected Plaintiff to racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), wrongful discharge, retaliation, race-based hostile work environment, "theft of funds," and "dishonest business practices" when Defendant employed and then fired Plaintiff.[4]  (Complaint, ECF No. 1. at 1-2.) Defendant subsequently requested a pre-motion conference pursuant to the undersigned's Individual Practice Rules to obtain leave to file the instant motion.  (ECF No. 16.)  On June 15, 2023, the Court held the requested conference, set a briefing schedule for the instant motion, and directed Plaintiff to resources available to assist pro se litigants.  (ECF No. 27.)  On July 27, 2023, Defendant filed the fully briefed motion.  (ECF No. 33.)

## II.   LEGAL STANDARDS

A.   **The FAA**

The FAA provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ."  9 U.S.C. § 2.  The FAA thus reflects a "federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal quotation marks omitted).

"In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate."  Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101 (2d Cir. 2022).

---

[4]   The Complaint named Defendant as "Bloomingdales, an agent of Macy's." (ECF No. 1).  Defendant has since repeatedly confirmed that it is properly named Bloomingdale's LLC, and that it is a wholly-owned subsidiary of Macy's Retail Holdings, LLC, which in turn is a wholly-owned subsidiary of Macy's, Inc.  (See, e.g., ECF No. 14 (corporate disclosure statement).)

If a court concludes that the parties agreed to arbitrate, it must then determine "(1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." Id.

As noted above, the Court undertakes this analysis by considering all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the nonmoving party. Meyer, 868 F.3d at 74; Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). This standard is "similar to that applicable for a motion for summary judgment." Meyer, 868 F.3d at 74 (internal quotation marks omitted).

**B.     Plaintiff's Pro Se Status**

Given that Plaintiff is pro se, the Court must "liberally construe" Plaintiff's filings and "read[] such submissions to raise the strongest arguments they suggest." Publicola v. Lomenzo, 54 F.4th 108, 111 (2d Cir. 2022) (quoting McLeod v. Jewish Guild For The Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam)). This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." McLeod, 864 F.3d at 156 (internal quotation marks omitted; emphasis added). The obligation to liberally construe Plaintiff's filings, however, "is not the equivalent of a duty to re-write [them]." Williams v. Richardson, 425 F. Supp. 3d 190, 201 (S.D.N.Y. 2019) (internal quotation marks omitted). Further, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" E.g., Peavey v. A. Rosenblum, Inc., 793 F.

7

Supp. 2d 590, 594 (E.D.N.Y. 2011) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); see Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (similar).

### III.   DISCUSSION

#### A.   The Parties Agreed To Arbitrate

The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." Zachman, 49 F.4th at 101-02. "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." Id. at 102; see Barrows v. Brinker Rest. Corp., 36 F.4th 45, 50 (2d Cir. 2022) (similar). Whether such an agreement existed is a question of applicable state contract law. Zachman, 49 F.4th at 101; Barrows, 36 F.4th at 50. New York law applies here because the Plan Document, which provides the terms for compulsory arbitration, is governed by the law of "the state in which the employee is or was employed." (Plan Document, ECF No. 33-4 at 33); see Zachman, 49 F.4th 95 at 101 (evaluating arbitration clause under New York law consistent with the agreement's choice of law provision). Under New York law, the formation of a valid contract requires an offer, acceptance, consideration, mutual assent, and intent to be bound. Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004). An arbitration clause in a written agreement is enforceable under New York law when "the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate." Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 144 (2008) (internal quotation marks omitted).

Defendant showed that an agreement to arbitrate exists between the parties. Defendant produced Plaintiff's electronically signed Acknowledgment Form in which Plaintiff expressly consented to arbitrate disputes as provided in the Plan Document. (See ECF No. 33-5.) Additionally, Defendant provided evidence that Plaintiff never submitted the Election Form.

8

(Ripak Decl. ¶ 30.) As courts in this Circuit have repeatedly found, signing the Acknowledgment Form and failing to timely submit the Election Form constitute an agreement to arbitrate under New York law. See, e.g., Crawley, 2017 WL 2297018, at *5; Pierre v. Macy's Inc., No. 16-CV-2556, 2016 WL 11652066, at *3-4 (E.D.N.Y. Nov. 23, 2016); Teah v. Macy's Inc., No. 11-CV-1356, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011); see also Barrows, 36 F.4th at 50 (finding defendant satisfied its initial burden by producing an arbitration agreement governed by New York law "that appears to bear [plaintiff]'s electronic signature").

Even putting aside the Acknowledgment Form, Defendant provided a second, independent basis that establishes an agreement to arbitrate exists between the parties. Specifically, Plaintiff worked for Defendant after she was informed that failure to timely submit the Election Form would be deemed consent to compulsory arbitration as outlined in the Plan Document. "Under New York law, a contract may be formed . . . by conduct that demonstrate[s] the parties' mutual assent." Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009) (first citing Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., 448 F.3d 573, 582 (2d Cir. 2006); and then citing Maas v. Cornell Univ., 94 N.Y.2d 87, 93–94, (1999)). Instructive here are the Second Circuit's applications of that principle under similar circumstances. In Manigault, the plaintiff received materials describing the SIS Program, continued with her employment, and did not opt out of arbitration. Id. The Second Circuit held that—even though she "never signed" an Acknowledgement Form—the plaintiff "agreed to arbitration by continuing with her employment" after she received notice of the SIS Program. Id. (citing Bottini v. Lewis & Judge Co., 621 N.Y.S.2d 753, 754 (App. Div. 3d Dep't 1995)). In DuBois v. Macy's E. Inc., the Second Circuit similarly held that the plaintiff's continued employment after receiving notice of the SIS Program and the lack of evidence that he submitted an Election Form constituted agreement to mandatory

9

arbitration. See 338 F. App'x 32, 33 (2d Cir. 2009). District courts in this Circuit have followed suit. See Feroce v. Bloomingdale's Inc., No. 12-CV-5014, 2014 WL 294199, at *6 (E.D.N.Y. Jan. 24, 2014) ("Plaintiff consented to arbitration by failing to opt out of Step Four Arbitration after being informed of the Program and opt out procedure through multiple channels . . . ."); Teah, 2011 WL 6838151, at *5 (similar).

"Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" Zachman, 49 F.4th at 102 (quoting Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010)). To this end, Plaintiff argues in her Opposition Memorandum that she "did NOT sign an Arbitration Clause." (ECF No. 33-19 at 2.) "Plaintiff, however, has not submitted any affidavit or other admissible evidence in support of this assertion." Pierre, 2016 WL 11652066, at *4. Plaintiff's assertions in her Opposition Memorandum are not sufficient to create a genuine issue of fact with regard to whether she signed an arbitration agreement.[5] Id. The only evidence before the Court shows that plaintiff signed the Acknowledgment Form and thereby consented to the Plan Document's arbitration terms.[6] In any event—even assuming, for the sake of argument, that Plaintiff did not sign the Acknowledgment Form—Plaintiff's continued employment after she received notice of the SIS Program and her failure to submit an Election Form reflect that the

---

[5] The motion papers Defendant served on Plaintiff included a Local Civil Rule 12.1 Notice that informed Plaintiff that she was required to submit evidence in response to Defendant's motion and that "[a]ny witness statements must be in the form of affidavits," which had to be sworn. (ECF No. 33-1). Despite receiving this notice, Plaintiff has not submitted a sworn affidavit.

[6] The Court also notes that Plaintiff's unsworn Opposition Memorandum—which asserts, in conclusory fashion, that Plaintiff did not "sign an Arbitration Clause" and argues Defendant erred by not submitting declarations from New York-based human resources personnel (ECF No. 33-19 at 2)—does not squarely deny that Plaintiff electronically signed the Acknowledgement Form by entering her Social Security Number, birth date, and zip code after being informed that this would constitute her electronic signature. (Sherrick Decl. ¶¶ 4-15.)

parties agreed to arbitrate consistent with the Plan Document.[7]  See Manigault, 318 F. App'x at 8; DuBois 338 F. App'x at 33.

## B.   The Arbitration Clause Covers Plaintiff's Claims

"[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173, 179 (2d Cir. 2021) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010)) (emphasis removed).  The Court must apply "ordinary principles of contract interpretation" to determine whether "a particular dispute is covered by the [arbitration] language to which the parties agreed."[8]  Local Union 97, IBEW v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023).

The Plan Document's express terms plainly require the parties to participate in final and binding arbitration for Plaintiff's discrimination, hostile work environment, wrongful discharge, and retaliation claims.  See Pierre, 2016 WL 11652066, at *4 (finding the Plan Document's arbitration provision covered claims for, among other things, discrimination, wrongful discharge, and retaliation); Feroce, 2014 WL 294199, at *6 (finding the Plan Document's arbitration provision covered discrimination claims); Teah, 2011 WL 6838151, at *7 (same).  Plaintiff's claims for "theft of funds" and "dishonest business practices" (Complaint, ECF No. 1 at 1) are likewise covered.

---

[7]     In her Opposition Memorandum, Plaintiff does not deny that received the Brochure, Plan Document, and Election Form.  (see generally ECF No. 33-19 at 2.)  Nor does Plaintiff deny that she viewed the video about the SIS Program or completed the related certification affirming that she had viewed the video.  (see generally id.)

[8]     Courts may also "as a last, rather than first, resort" rely on the "presumption of arbitrability."  Local Union 97, IBEW, 67 F.4th at 114.  Under that principle, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' including when 'the problem at hand is the construction of the contract language itself.'" Cooper, 990 F.3d at 186 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).  The presumption can "only be overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."  Local Union 97, IBEW, 67 F.4th at 114 (internal quotation marks and alterations omitted).  It is unnecessary for the Court to rely on the presumption of arbitrability here.

The Plan Document requires the parties to participate in final and binding arbitration for "all employment-related legal disputes . . . ." (Plan Document, ECF No. 33-4 at 24). "[I]n the context of an employment arbitration agreement, a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." Cooper, 990 F.3d at 184. Plaintiff's "theft of funds" and "dishonest practices" claims are premised on facts particular to her employment and are therefore subject to arbitration.[9] (See Complaint, ECF No. 1.)

## C.  There Is No Basis To Preclude Arbitration Of Plaintiff's Federal Claims

The Supreme Court has long recognized that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002); see Bissonnette v. Lepage Bakeries Park St., LLC, 33 F.4th 650, 657 (2d Cir. 2022) ("As the plaintiffs do not work in the transportation industry, they are not excluded from the FAA."). Pertinent here, the Supreme Court has also "been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 266 (2009) (quoting Cir. City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001)). Accordingly, to the extent Plaintiff's claims are asserted under federal law (as the retaliation and hostile work environment claims may be and the Title VII discrimination claim is), those claims are arbitrable. See, e.g., McCoy v. Dave & Buster's, Inc., No. 15-CV-0465, 2018 WL 550637, at *5 (E.D.N.Y. Jan. 24, 2018) (recognizing it is "well settled" that Congress has not precluded arbitration of Title VII claims).

---

[9]  The same reasoning would also compel the Court to find the Plan Document covers Plaintiff's other claims even if the Plan Document did not expressly list them among the examples of claims subject to arbitration.

### D. The Court Will Stay This Action

All of Plaintiff's claims are arbitrable. See supra Parts III.B, III.C. The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 343 (2d Cir. 2015). At the same time, "the FAA permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration . . . ." Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund, 982 F.3d 851, 859 n.2 (2d Cir. 2020). Plaintiff did not request a stay. (See ECF No. 33-19.) Defendant requests a stay in the alternative to its request that this case be dismissed. (See ECF No. 33-2 at 22.) "When, as here, a defendant requests that an action be dismissed and requests a stay in the alternative, the Court has discretion in determining whether to stay or dismiss the case pending arbitration." Rost v. Liberty Coca-Cola Beverages, LLC, No. 20-CV-10559, 2021 WL 3723092, at *5 (S.D.N.Y. Aug. 23, 2021) (internal quotations omitted). A stay "enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." Katz, 794 F.3d at 346. Accordingly, in an exercise of discretion, the Court will stay this action pending completion of arbitration.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration is GRANTED and this action is STAYED pending arbitration.

The Clerk of the Court is respectfully directed to mail a copy of this Order to Plaintiff and to administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[10]

**SO ORDERED.**

Dated:   December 8, 2023
         Central Islip, New York

                                             /s/ (JMA)
                                     JOAN M. AZRACK
                                     UNITED STATES DISTRICT JUDGE

---

[10]   See Zimmerman v. UBS AG, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience. Nor does it amount to an appealable dismissal." (internal quotation marks and citation omitted)).

14